# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KARL MITCHELL and KAYLA
MITCHELL,

       Plaintiffs

v.

NYE COUNTY, NEVADA, a political
subdivision of the State of Nevada, HARRY
WILLIAMS, SUSAN RYHAL, SHARON
WEHRLY, ZUZANA KUKOL, and SCOTT
SHOEMAKER,

       Defendants

Case No.: 2:20-cv-00086-APG-VCF

**Order Granting Motion to Dismiss First
Amended Complaint, Denying Special
Motion to Dismiss State Law Claims, and
Denying Motion to Strike**

[ECF Nos. 73, 86]

This case arises out of the plaintiffs Karl Mitchell and his wife Kayla Mitchell's attempts
to secure permits required to house tigers in Nye County, Nevada.  The defendants are: Nye
County; Harry Williams, a Nye County Sheriff's Office (NCSO) Lieutenant; Susan Ryhal, an
NCSO Animal Control Division employee; Sharon Wehrly, the Nye County Sheriff
(collectively, the Nye County defendants); and Zuzana Kukol and Scott Shoemaker, who are
fellow big cat owners in Nye County who allegedly assisted Nye County in imposing
unconstitutional conditions on the Mitchells' permits.

The Mitchells bring ten causes of action in the first amended complaint (FAC).  They
assert Counts I-III under 42 U.S.C. § 1983 against all the defendants.  In Count I, they allege the
defendants violated the unconstitutional conditions doctrine.  Count II alleges the defendants
violated the equal protection clauses of both the Fifth and Fourteenth Amendments.[1]  They

---

[1] With regard to this cause of action, the FAC also alleges that the defendants violated the
"Substantive Due Process Clause of the Constitution." ECF No. 59 at 22.  However, the FAC
makes no allegations regarding a deprivation of a fundamental right as required for a substantive
due process claim and the FAC seems to be alleging equal protection violations in this count.

1  allege in Count III that the defendants are liable under the *Monell* doctrine for their deficient

2  policies and their failure to train permit holders with regard to Nye County's new permit

3  procedures.  Count IV alleges conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3)

4  against all defendants.

5        Counts V-X allege state law claims against various defendants.  Counts V-VIII are

6  brought against all defendants and allege intentional interference with contractual relations

7  (Count V), intentional infliction of emotional distress (Count VI), negligence (Count VII), and

8  civil conspiracy (VIII).  Count IX alleges a defamation claim against Ryhal.[2]  Finally, Count X

9  alleges a defamation per se claim against Kukol and Shoemaker.

10        Kukol and Shoemaker move to dismiss the FAC under Federal Rule of Civil Procedure

11  12(b)(6) and under Nevada's anti-SLAPP statute.  The Nye County defendants joined that

12  motion.  The Mitchells attached to their response emails between various defendants, which

13  Kukol and Shoemaker move to strike.

14        I deny Kukol and Shoemaker's motion to strike because Federal Rule of Civil Procedure

15  12(f) is inapplicable to the non-pleading documents they move to strike.  I grant the motion to

16  dismiss the Mitchells' claims under 42 U.S.C. § 1983 against Kukol and Shoemaker in Counts I-

17  III because the Mitchells have not plausibly alleged that Kukol and Shoemaker acted under color

18  of state law.  Counts IV-VIII and X do not state a claim upon which relief can be granted, so I

19  dismiss them.  I grant the Mitchells leave to amend to correct the identified deficiencies if facts

20  _____

21  Consequently, I do not address a substantive due process claim. *See C.R. v. Eugene Sch. Dist. 4J*,
    835 F.3d 1142, 1154 (9th Cir. 2016) (noting that substantive due process generally protects
22  "fundamental rights to liberty and bodily autonomy").

23  [2] Kukol and Shoemaker's motion does not address this claim brought against only Ryhal.  The
    Nye County defendants' joinder also does not address this claim.  I therefore do not address it
    and Count IX remains pending.

1 | exist to do so.  Because I have dismissed the state law claims against Kukol and Shoemaker

2 | under Rule 12(b)(6), I deny as moot their special motion to dismiss those counts under Nevada's

3 | anti-SLAPP statute.

4 | **Background**

5 | Karl Mitchell owns Bengal tigers that live on his property in Nye County. ECF No. 59 at

6 | 3-6.  Nye County established new zoning requirements regarding owning exotic animals in 2007.

7 | *Id.* at 6.  These changes required exotic animal owners to hold a new zoning permit, known as a

8 | Title 17 Conditional Use Permit (CUP), and created an exception to this requirement for those

9 | who owned such animals before these changes. *Id.* at 6-7.  The FAC alleges that Karl comes

10 | within this exception, but Nye County's Regional Planning Commission (RPC) required him to

11 | obtain a CUP in 2009. *Id.* at 6.  After Karl moved to a new property in 2010, Nye County

12 | emergency services approved the new property for tigers and waived the need for a CUP, finding

13 | the grandfathering and sanctuary exemptions applied. *Id.*

14 | That same year however, the RPC nevertheless required Karl to apply for a CUP. *Id.*  The

15 | RPC insisted Karl do so despite his response that he was grandfathered in, he was an animal

16 | humane officer, and his property was exempt as a sanctuary for exotic animals. *Id.* at 6-7.  Karl

17 | alleges he was the only exotic animal owner in Nye County required to obtain a CUP. *Id.* at 7.

18 | Karl successfully applied for a CUP in 2010. *Id.*  CUPs require renewal every two years,

19 | and Karl applied for renewal in 2012. *Id.*  His 2012 renewal was denied because he was accused

20 | of exhibiting animals. *Id.*  Karl appealed this decision to the Nye County Board of County

21 | Commissioners (BOCC), which overturned the denial and issued Karl his CUP in 2012. *Id.*

22 |

23 |

In 2015, the Mitchells' CUP was renewed for two years.[3] *Id.* at 8.  That same year, Kayla Mitchell was granted a one-year Special Conditions Animal Permit (SCAP). *Id.*  In October 2016, the Mitchells requested an inspection to renew their SCAP, but Nye County Animal Control (NCAC) did not respond to their request or to their follow-up emails. *Id.* at 9.  The FAC alleges NCSO took over NCAC in or around 2016. *Id.*  On December 20, 2016, Kayla Mitchell passed her inspection and was told she would be receiving her new SCAP in the mail, but it never came. *Id.* at 9-10; ECF No. 59-5.  The FAC details her continued correspondence with Nye County personnel regarding the status of her permit. *Id.* at 10; ECF Nos. 59-7, 59-8.

In July 2017, Ryhal came to the Mitchells' property with members of NCSO's SWAT team. ECF No. 59 at 10.  The FAC alleges Ryhal demanded entry onto the property based on a criminal complaint submitted to NCSO. *Id.*  The Mitchells denied her entry because she did not have a search warrant. *Id.*  Ryhal cited Kayla for a violation of her permit because Kayla did not allow Ryhal to search the property. *Id.*  NCSO's SWAT team allegedly came to the Mitchells' property every day for over a week demanding entry to the property. *Id.* at 11.  Later that month, an NCAC employee came for an inspection and the Mitchells allowed her entry. *Id.*  The Mitchells passed this inspection but they did not receive a SCAP. *Id.*

The Mitchells met with Wehrly in October 2017 regarding Ryhal's attempts to gain access to their property. *Id.* at 12.  Wehrly instructed Ryhal to leave the Mitchells alone. *Id.*

That same month, Kayla Mitchell requested to renew her CUP. *Id.* at 12.  NCAC inspected the property in November 2017, and the Mitchells passed. *Id.*  But in December 2017,

---

[3] The Mitchells state that CUPs require renewal every two years, and the Mitchells successfully renewed their CUP in 2014 and 2016. *Id.* at 7, ¶ 38.  Later however, the Mitchells state Kayla applied to renew their CUP in 2015 and was granted a CUP for a two-year period in 2015. *Id.* at 8, ¶ 42-43.  This inconsistency is not relevant to my decision, but I note it here for clarity.

the RPC denied Kayla's CUP renewal application, citing the fact that the Mitchells had not had a SCAP since October 2016 and had exhibited animals years earlier. *Id.* By December 2017, NCAC had told multiple agencies that the Mitchells did not have their required permits, which caused the Mitchells to miss an opportunity to acquire animals from the Las Vegas Metropolitan Police Department. *Id.*

In February 2018, the BOCC overturned the RPC's denial of the CUP. *Id.* at 13. That same month, the Mitchells requested to renew their SCAP. *Id.* They were given a different application than they had completed in prior years. *Id.* This one was more extensive and intrusive than prior applications. *Id.* Williams told the Mitchells they had to complete the new application to obtain the CUP. *Id.*

In July 2018, the Mitchells' SCAP application was denied, citing the fact that they had not had a CUP since 2016 despite having won their appeal for the CUP months earlier. *Id.* The denial letter also cited the fact that the Mitchells did not pay an application fee. *Id.* According to the FAC, the Mitchells did not receive an invoice for this fee as they had in the past, or a notification that the fee had been increased. *Id.* at 13-14. The denial letter also stated that the Mitchells had exhibited animals without a permit. *Id.* at 14. The Mitchells deny they exhibited their animals. *Id.* The letter gave the Mitchells approximately 30 days to relocate their tigers. *Id.* Wehrly later informed them they filled out the wrong application, as the one they were given had not yet been approved by the BOCC. *Id.* The FAC alleges that other, non-minority permit holders did not have to complete it. *Id.* at 15.

The Mitchells appealed to the BOCC in July 2018. *Id.* They received an amended denial of their SCAP, which cited new exhibiting allegations against them. *Id.* They appealed that denial and were scheduled for an October 16, 2018 BOCC hearing. *Id.* The Mitchells contend the

5

1   BOCC and NCSO conspired with and received guidance, counsel, and direction from Kukol and

2   Shoemaker in preparing conditions to place on the Mitchells' permit. *Id.*  They allege Kukol,

3   Shoemaker, and Nye County personnel corresponded prior to this meeting as follows:

4   - In February 2018, Shoemaker emailed "dschinhofen@co.nye.nv.us" with the subject line

5      "Karl Mitchell." ECF No. 59-10 at 4.  Shoemaker wrote that "[s]ince Karl Mitchell wants

6      to play this game of having tigers as emotional support animals, the county should play

7      his game." *Id.*  The email states that while the CUP did not limit the number of animals

8      Karl could have, Shoemaker recommended the BOCC modify the CUP to include

9      additional conditions. *Id.*  Specifically, Shoemaker recommended that Karl should be

10     allowed up to three "Animal Special Conditions" and while he could maintain his current

11     10 tigers, he would not be able to replace or acquire any "Animal Special Conditions"

12     until he had fewer than three tigers. *Id.*  Shoemaker also recommended that Karl be

13     precluded from exhibiting any "Animal Special Conditions" and animals must remain in

14     enclosures during filming or visits with family and friends. *Id.*

15  - That same month, Shoemaker emailed Williams regarding a code exemption he was

16     attempting to obtain. *Id.* at 5.  His email mentioned that he was sorry about the Karl

17     Mitchell case, and that he was sure Karl would screw up renewing his permit again when

18     it expired in four months. *Id.*

19  - Also that month, Ryhal asked Kukol to give her and Williams "a crash course in proper

20     enclosure inspection according to USDA guidelines[.]" *Id.* at 2-3.  Kukol agreed to do so

21     and copied Shoemaker on one of her replies. *Id.* at 2.

22  - In August 2018, Shoemaker copied Kukol on an email to John Koenig, an individual with

23     a Nye County email address, with the subject line "Karl's Appeal." *Id.* at 8.  Shoemaker

asked Koenig if there was any more back up material on Karl's permit denial. *Id.*
Shoemaker was looking for the information NCAC had and Karl's arguments for getting
the permit. *Id.*  Shoemaker asked if public comment would be allowed at the hearing. *Id.*
He stated "[a]s you might guess, we are not keeping quiet this time." *Id.*  Koenig
responded "forward"[4] and that he would welcome any and all help at the hearing. *Id.*
Koenig told Shoemaker that Shoemaker would be able to talk at the hearing and that full
backup should be available by then. *Id.*  Koenig stated that he "may call [Shoemaker]
before that meeting." *Id.*  Shoemaker responded that he and Kukol would attend the next
meeting Karl was scheduled for. *Id.*  He also stated that he and Kukol were "more than
willing to help with anything [Koenig] need[ed]," as they had "had enough." *Id.*

- In September 2018, Shoemaker emailed Koenig and copied Kukol, asking if there were
  any surprises at the meeting the day before regarding Karl. *Id.* at 7.

- Four days before the October BOCC appeal hearing, Shoemaker emailed Koenig and
  copied Kukol, asking if Koenig wanted to talk about Karl's appeal. *Id.* at 6.  Shoemaker
  stated that "we reviewed the back up and it seems pretty cut and dry." *Id.*  Shoemaker
  stated that Karl did not want to pay the permit fee and had a history of exhibiting. *Id.*
  The email also stated that "the stuff with the Vegas magician is what matters." *Id.*
  Shoemaker wrote that he noticed Karl was given "the same application that hasn't been
  approved" and asked for a fee refund if Karl's fee was waived. *Id.*

At the October 16, 2018 appeal hearing, the Mitchells received another denial letter citing
new allegations that they had violated their SCAP. ECF No. 59 at 15.  The letter removed

---

[4] The exhibit does not make clear whether Koenig forwarded any additional information as
Shoemaker requested.

1 | allegations that had been disproved. *Id.*  The hearing was continued until February 2019, when

2 | the BOCC overturned the denial. *Id.* at 16.  Although it overturned the denial, the BOCC

3 | imposed conditions on the permit that required the tigers to remain in their cages during any

4 | filming and while friends and family were on the Mitchells' property. *Id.*  The conditions also

5 | required the Mitchells provide notice to NCSO when their animals would be traveling and

6 | required that that the animals could travel only for veterinarian purposes. *Id.*  The Mitchells were

7 | allowed to have a maximum of 10 tigers on their property. *Id.*

8 |       The Mitchells allege that no other SCAP holder has these conditions imposed on them,

9 | and that no other Nye County tiger owner has faced the same CUP restrictions or were required

10 | to complete the extensive application. *Id.*  They also allege they have had to turn down filming

11 | opportunities due to the restrictions placed on their permits. *Id.* at 17.  They further allege that

12 | someone with the profile name "Scott Rexano Shoemaker" created a Facebook message that

13 | stated, "Mitchells are Lowe's customers for the cubs." *Id.* at 29.  The message was signed as "Z."

14 | *Id.*  The Mitchells claim they have never purchased a tiger cub, and that purchasing a tiger cub is

15 | illegal. *Id.*  They allege that other Facebook users read, replied to, and believed the message, and

16 | that this information was disseminated to unknown agencies. *Id.*

17 |       Based on these allegations, the Mitchells sued the defendants asserting federal and state

18 | law claims.

19 | **Motion to Strike**

20 |       Kukol and Shoemaker move to strike the exhibit attached to the Mitchells' response to

21 | the motion to dismiss, as well as any extraneous factual allegations mentioned in the response

22 | that are not alleged in the FAC. ECF No. 86.  Their motion is filed under Federal Rule of Civil

23 | Procedure 12(f).  Rule 12(f) allows courts to strike matters from pleadings. Fed. R. Civ. P. 12(f)

("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). The Mitchells' response to their motion to dismiss is not a pleading, so I deny Kukol and Shoemaker's motion to strike.

Still, I consider only the material submitted as part of the FAC when ruling on the Rule 12(b)(6) motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). I may not look beyond the FAC to the Mitchells' moving papers, including their opposition to the motion. *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). While I may consider materials not submitted as part of the complaint in certain circumstances, those circumstances are not present here. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (finding the scope of review on a motion to dismiss for failure to state a claim is generally limited to the complaint, though a court may consider evidence on which the complaint necessarily relies if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the document's authenticity). I therefore exclude from consideration the materials and facts extraneous to the FAC which the Mitchells submitted through their opposition to the motion to dismiss (ECF Nos. 80, 82). I decline to convert the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Swedberg v. Marotzke*, 339 F.3d 1139, 1142-43, 1146 (9th Cir. 2003) (stating that a district court must take some affirmative action to convert a 12(b)(6) motion to dismiss supported by extraneous materials into a summary judgment motion).

**Motion to Dismiss**

A complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I apply a two-step approach when considering motions to dismiss. *Id.* at 679.  First, I accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiffs' favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice to form a properly pleaded complaint. *Iqbal*, 556 U.S. at 678.  Second, I consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679.  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted).  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  "This policy is to be applied with extreme liberality."

1  *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).

2  Leave to amend generally should be granted unless amendment would be futile. *See Lopez v.*

3  *Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

4  **Counts I-III – Claims under 42 U.S.C. § 1983**

5        The Mitchells bring Counts I-III against all defendants under 42 U.S.C. § 1983.  Count I

6  alleges the defendants violated the unconstitutional conditions doctrine.  Count II alleges the

7  defendants violated the equal protection clauses of the Fifth and Fourteenth Amendments.  Count

8  III alleges the defendants are liable under the *Monell* doctrine for their deficient policies and

9  their failure to train permit holders with regard to Nye County's new permit procedures.

10        Kukol and Shoemaker argue these three counts should be dismissed because the FAC

11  does not plausibly allege that Kukol or Shoemaker acted under the color of state law, as required

12  for these claims.  They contend the Mitchells pleaded no facts to allege that Kukol and

13  Shoemaker acted in any official capacity, or that they are employed by or represent Nye County

14  such that their actions could be imputed to the county.  They also assert the FAC does not

15  contain any instance of Nye County directing Kukol and Shoemaker to undertake any activity

16  such that an agency relationship would attach.  Kukol and Shoemaker contend the emails

17  exchanged among Kukol, Shoemaker, and county officials regarding the permits are protected

18  under the First Amendment's right to petition the government and cannot turn their conduct into

19  state action.[5]

20

21

22

23

---

[5] The Nye County defendants recognize that Kukol and Shoemaker's arguments regarding lack of state action do not apply to them. ECF No. 79 at 4.  Thus, I address these claims only as they apply to Kukol and Shoemaker.

The Mitchells respond that Kukol and Shoemaker are joint participants in state action, citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). They argue that Kukol and Shoemaker's joint participation with the county deprived them of their viable use and enjoyment of their land and their right to travel with their tigers. They argue Kukol and Shoemaker acted in concert with Nye County to place conditions on the permits. The Mitchells allege the incidents described in the FAC created an agency relationship with Nye County.[6]

To state a claim under § 1983, the Mitchells must allege the defendants violated their constitutional rights and acted under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 921 (9th Cir. 2011). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Adkins*, 487 U.S. 42, 49 (1988) (quoting *U.S. v. Classic*, 313 U.S. 299, 326 (1941)).

In some circumstances, private actors can be found to act under color of state law. I follow a two-part approach to determine whether actions committed by private actors are fairly attributable to the state. First, I examine whether "the deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Florer*, 639 F.3d at 922 (quoting *Lugar*, 457 U.S. at 937). "Second, the party charged with the deprivation must be a person who may fairly be said

---

[6] The FAC refers to Kukol and Shoemaker as Nye County's agents. The Mitchells' response to the motion to dismiss relies upon the joint participation test to allege an agency relationship. I therefore address that test with regard to whether Kukol and Shoemaker acted under color of state law.

to be a state actor." *Id.* (quotation omitted).  I start with the presumption that conduct by private actors is not state action. *Id.*  "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Ass'n*, 531 U.S. 288, 295 (2001) (quotation omitted).  The Ninth Circuit has recognized four criteria used to identify whether the relevant party is a state actor for the second part of the two-part test: "(1) public function; (2) governmental compulsion or coercion; (3) governmental nexus; and (4) joint action." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quotation omitted).

I address only the joint action test because the Mitchells rely on it to argue Kukol and Shoemaker acted under color of state law.  Under the joint action test, I consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity.  This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Florer*, 639 F.3d at 926; *see also Tsao v. Desert Place, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (finding casino's behavior qualified as state action under joint action test where casino employees gained authority to issue summons in lieu of arrests by completing training given by police department).

Drawing all reasonable inferences from the FAC in the Mitchells' favor, the FAC does not plausibly allege joint activity between Kukol and Shoemaker and any Nye County actor. The FAC alleges that Kukol and Shoemaker corresponded with Nye County personnel regarding the Mitchells' permit.  The correspondence does not plausibly allege that Nye County had insinuated itself into a position of interdependence with Kukol and Shoemaker.  The correspondence at most alleges that Kukol and Shoemaker provided advice and proposals to Nye County, but this does not allege that they were state actors.  The Mitchells have alleged only that

1 Kukol and Shoemaker exercised their lawful First Amendment right to petition the government.

2 This is a "significant countervailing reason" against attributing such activity to the state because

3 "[i]f we deemed citizens' lawful and protected efforts to influence government 'state action,'

4 then citizens could be held liable whenever their political activities played a role in government

5 action later determined to have been unconstitutional." *Single Moms, Inc. v. Mont. Power Co.*,

6 331 F.3d 743, 748-49 (9th Cir. 2003). That "would have a chilling effect on legitimate political

7 expression in derogation of the First Amendment," and "would threaten to deprive government

8 of useful information that private citizens might otherwise provide." *Id.* at 749. Because the

9 FAC does not plausibly allege that Kukol and Shoemaker acted under color of state law, it fails

10 to state a claim against them in Counts I-III.[7] I therefore dismiss those claims against Kukol and

11 Shoemaker, with leave to amend. Because this argument does not apply to the Nye County

12 defendants, Counts I-III remain pending against them.

13                         **Count IV – Conspiracy to Interfere with Civil Rights**

14          Count IV alleges conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3)

15 against all defendants. Kukol and Shoemaker argue the FAC fails to plausibly allege this claim

16 because their emails with Nye County employees amount to an exercise of their First

17 Amendment right to petition the government. They also argue that Nye County had a rational

18 basis for imposing conditions on the Mitchells' permit to further a legitimate government

19 interest. The Nye County defendants join in these arguments and seek dismissal as well.

20

---

21 [7] Kukol and Shoemaker argue I should dismiss the Mitchells' fourth cause of action (asserting
22 conspiracy to interfere with civil rights) under this reasoning as well. But the Mitchells are not
   required to plausibly allege that Kukol and Shoemaker acted under color of state law to state a
23 claim for conspiracy to interfere with civil rights. *Griffin v. Breckenridge*, 403 U.S. 88, 101
   (1971) ("It is thus evident that all indicators . . . point unwaveringly to § 1985(3)'s coverage of
   private conspiracies."). I therefore decline to dismiss the fourth cause of action for this reason.

The Mitchells respond by pointing to Kukol and Shoemaker's correspondence with Nye County personnel ahead of BOCC meetings, and to Nye County's utilizing Kukol and Shoemaker as consultants for big cat matters.

To state a claim of conspiracy to interfere with civil rights under § 1985(3), a plaintiff must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "[T]he second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quotation omitted).

Karl Mitchell is African American. ECF No. 59 at 3. The FAC makes conclusory allegations that the Mitchells have been treated differently than other big cat owners in Nye County. *See, e.g., id.* at 16 ("There are other tiger owners in Nye County who . . . are not racial minorities and do not face the same discrimination and selective enforcement . . . which the Plaintiffs have endured."); *id.* at 21 ("Nye County . . . ha[s] discriminated against Plaintiff Karl Mitchell, an African American male, who has been treated differently and given more restrictive measures, than any other non-minority person with exotic animals, because of his status as an African American, denying him equal protection under the law . . . ."). But the FAC contains no factual allegations about who the other big cat owners are, their race, or what conditions are imposed on them. The FAC's vague and conclusory assertions are insufficient for me to

1  reasonably infer that the defendants were motivated to deny Karl Mitchell's permit because of

2  his race.  The allegations that Nye County corresponded with Kukol and Shoemaker ahead of

3  BOCC meetings are not sufficient to plead the defendants acted to deprive Karl of equal

4  protection of the law.  I therefore dismiss the Mitchells' fourth cause of action against all

5  defendants with leave to amend.

6  **Count V – Intentional Interference with Contractual Relations**

7  Count V alleges intentional interference with contractual relations against all defendants.

8  Kukol and Shoemaker argue that the Mitchells pleaded no facts to allege that Kukol and

9  Shoemaker knew of any contract or acted to disrupt any contract.  They contend that the

10  Mitchells do not allege that a valid and existing contract was disrupted, and that the allegation

11  that the Mitchells turned down filming opportunities is insufficient to state this claim.  The Nye

12  County defendants join in this argument.  The Mitchells do not respond to this argument.

13  To state a claim of intentional interference with contractual relations, a plaintiff must

14  allege: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract;

15  (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual

16  disruption of the contract; and (5) resulting damage." *See J.J. Industries, LLC v. Bennett*, 71 P.3d

17  1264, 1267 (Nev. 2003) (quotation omitted).  The plaintiff must allege that "the defendant had a

18  motive to induce breach of the contract with the third party." *Id.* at 1268.

19  I grant this portion of the motion as unopposed. *See* LR 7-2(d).  Further, I cannot

20  reasonably infer from the facts alleged in the FAC that a valid contract existed at the time the

21  conditions were placed on the Mitchells' permit.  The FAC states the Mitchells had to turn down

22  contracts to film on their property as a result of the defendants' conditions on their permit. ECF

23  No. 59 at 25.  But there is no information about when they did so in relation to when the

1    conditions were imposed.  Further, the FAC does not plead any facts to suggest that any of the

2    defendants knew about any contract or that they acted intentionally to disrupt any contract.

3    Finally, the FAC does not allege that Kukol and Shoemaker placed any conditions on the

4    Mitchells' permit or otherwise actually disrupted the contract.  I therefore dismiss this claim

5    against all defendants, with leave to amend.

6                                          **Count VI – IIED**

7          Count VI alleges Intentional Infliction of Emotional Distress (IIED) against all

8    defendants.  Kukol and Shoemaker argue that the Mitchells make no allegations that would rise

9    to the level of outrageous conduct required for IIED, or that the Mitchells suffered severe or

10   extreme emotional distress.  The Nye County defendants join this argument and, again, the

11   Mitchells do not respond to it.

12         To state a claim for IIED, a plaintiff must allege that the defendant engaged in extreme

13   and outrageous conduct that intentionally or recklessly caused severe emotional distress or

14   bodily harm. *Olivero v. Lowe*, 995 P.2d 1023, 1025-26 (Nev. 2000).  Extreme and outrageous

15   conduct is conduct that is "outside all possible bounds of decency" and is regarded as "utterly

16   intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev.

17   1998).  Annoyances, petty oppressions, or other trivialities do not give rise to liability for IIED.

18   *Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020) (citing *Candelore v. Clark Cnty. Sanitation*

19   *Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)); *see also* Restatement (Second) of Torts § 46 cmt. d

20   (1965).[8]  I initially determine whether "conduct may reasonably be regarded as so extreme and

21

22

---

23   [8] The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as
     relevant authority for IIED claims under Nevada law. *See, e.g., Olivero*, 995 P.2d at 1026-1027
     n.1.

outrageous as to permit recovery . . . ." Restatement (Second) of Torts § 46 cmt. h.  If reasonable minds could disagree, then the question is one for the jury. *Id.*

I grant this portion of the motion as unopposed. *See* LR 7-2(d).  Further, the FAC contains only conclusory statements that do not satisfy Rule 8's pleading requirements.  The FAC does not allege which conduct by which defendants was extreme and outrageous. *See Armstrong v. Reynolds*, No.: 2:17-cv-02528-APG-CWH, 2019 WL 1062364 at *7 (D. Nev. Mar. 6, 2019) (dismissing IIED claim where plaintiff did not identify the defendants' behavior that she was alleging was extreme and outrageous and left defendants to guess what conduct underlaid claim).  I therefore dismiss the Mitchells' IIED claim as against all defendants, with leave to amend.

### Count VII – Negligence

Count VII alleges negligence against all defendants.  Kukol and Shoemaker argue the FAC contains no facts alleging Kukol and Shoemaker owed a legal duty of care.  Further, they contend that their communications with Nye County personnel are protected by the First Amendment, so the allegations fail to allege any duty or breach. The Nye County defendants join in the argument and the Mitchells did not respond to it.

In Nevada, a plaintiff must allege four elements for a negligence claim: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012).  Whether a defendant owes a duty of care to a plaintiff is a question of law. *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001).

I grant this portion of the motion as unopposed. *See* LR 7-2(d).  Further, the FAC does not allege a plausible negligence claim.  The conclusory allegations that the defendants each

1  owed a duty of care to the Mitchells and that they breached that duty by failing to afford the

2  Mitchells equal protection under the law do not satisfy Rule 8's pleading requirements.  The

3  Mitchells do not set forth each defendant's duty or the actions that breached the duty.  The

4  Mitchells' allegation that "but for Defendants' actions, Plaintiffs would not have been harmed"

5  merely recites an element of negligence and does not suffice to form a properly pleaded

6  negligence claim.  I therefore dismiss the Mitchells' negligence claim against all defendants,

7  with leave to amend.

8                              **Count VIII – Civil Conspiracy**

9          Count VIII alleges civil conspiracy against all defendants.  Kukol and Shoemaker argue

10  the Mitchells fail to state a claim for civil conspiracy because the FAC fails to adequately state a

11  claim for any state law tort, fails to allege any damages, and fails to allege that Kukol and

12  Shoemaker acted in concert with other defendants to accomplish an unlawful act to harm the

13  Mitchells.  The Nye County defendants joined in the argument and the Mitchells did not respond

14  to it.

15          In Nevada, "civil conspiracy consists of a combination of two or more persons who, by

16  some concerted action, intend to accomplish an unlawful objective for the purpose of harming

17  another, and damage results from the act or acts." *Consol. Generator-Nev., Inc. v. Cummins*

18  *Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).  The unlawful objective

19  need not be a tort. *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015) (en

20  banc).  A plaintiff must allege an explicit or tacit agreement between the conspirators. *Guilfoyle*

21  *v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198-99 (Nev. 2014) (en banc).  Direct

22  evidence of an agreement to harm the plaintiff is not required, but the plaintiff must allege

23  evidence from which to infer such an agreement existed. *See id.* at 199.

I grant this portion of the motion as unopposed. *See* LR 7-2(d).  Further, the Mitchells have not adequately pleaded their civil conspiracy claim.  The FAC states that the defendants intended to deprive the Mitchells of their constitutional rights. ECF No. 59 at 27.  The FAC also states in conclusory fashion that the BOCC, RPC, NCSO, NCAC, Kukol, and Shoemaker agreed, understood, or had a "meeting of the minds" regarding their acts and unlawful objectives. *Id.* The FAC does not plausibly allege any facts from which to infer the defendants acted with the purpose of harming the Mitchells. *See Steele v. EMC Mortg. Corp.*, No. 59490, 2013 WL 5423081 at *1 (Nev. Sept. 20, 2013) (finding summary judgment was properly granted on civil conspiracy claim when it was purely speculative that respondents acted with the purpose of causing appellant harm).  I therefore dismiss the civil conspiracy claim against all defendants, with leave to amend.

### Count X – Defamation Per Se

Count X alleges defamation per se against Kukol and Shoemaker.  Kukol and Shoemaker contend the FAC does not state a claim for defamation per se because any alleged statements they made would not harm the Mitchells' business or business reputation where the FAC does not allege the Mitchells own their tigers as a business.[9]  The Mitchells did not respond to this argument.

To allege a claim for defamation, a plaintiff must allege: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 315 (Nev. 2005).  A statement is defamatory if it "would tend to

---

[9] The Nye County defendants join in this argument, though this claim is brought against only Kukol and Shoemaker.

lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (quotation omitted). If the defamatory statement "imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quotation omitted).

I grant this portion of the motion as unopposed. *See* LR 7-2(d). Further, the Mitchells' defamation per se claim arises out of a Facebook message created by a user with the name "Scott Rexano Shoemaker" and signed "Z," which stated that the "Mitchells are Lowe's customers for the cubs."[10] The FAC claims that the Mitchells have never purchased a tiger cub, and that doing so is illegal. The FAC alleges that other Facebook users read the message and it was disseminated to unknown agencies. The FAC does not plausibly allege that Kukol and Shoemaker were at least negligent in allegedly making the Facebook message. Consequently, I dismiss the defamation per se claim, with leave to amend.[11]

**Special Motion to Dismiss State Law Claims Under Nevada's Anti-SLAPP Statute**

Kukol and Shoemaker filed a special motion to dismiss the Mitchells' state law claims against them in Counts V-VIII and X under Nevada's anti-SLAPP statute. Kukol and

---

[10] The FAC does not allege that this message relates to the Mitchells' permit. I can exercise supplemental jurisdiction over the Mitchells' pendant state law defamation per se claim so long as it is part of the same case as their federal claims, meaning it derives from a common nucleus of operative fact and is one that the Mitchells would be ordinarily expected to try in the same proceeding. *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Because I am dismissing this claim with leave to amend, I will not rule on whether I can or will exercise supplemental jurisdiction over this claim at this time.

[11] In amending their claim, the Mitchells might also respond to Kukol and Shoemaker's argument that the post does not harm the Mitchells' business by alleging in more detail how it does so.

Shoemaker argue their email statements to county employees were made pursuant to their constitutionally protected right to petition, in direct connection to an issue of public concern. Because I dismiss the state law claims in Counts V-VIII and X under Rule 12(b)(6), the special motion to dismiss under Nevada's anti-SLAPP statute is moot.

## Conclusion

I THEREFORE ORDER that defendants Zuzana Kukol and Scott Shoemaker's motion to dismiss **(ECF No. 73) is GRANTED**.

I FURTHER ORDER that defendants Zuzana Kukol and Scott Shoemaker's special motion to dismiss state law claims under Nevada's anti-SLAPP statute **(ECF No. 73) is DENIED as moot.**

I FURTHER ORDER that defendants' motion to strike **(ECF No. 86) is DENIED.**

I FURTHER ORDER that the plaintiffs may file an amended complaint correcting the identified deficiencies if facts exist to do so.  Failure to file an amended complaint by December 17, 2021 will result in dismissal with prejudice of the claims that I have dismissed without prejudice in this order.  Regardless of whether the plaintiffs file an amended complaint, the following causes of action remain pending: Count I alleging violations of the unconstitutional conditions doctrine against the Nye County defendants; Count II alleging equal protection violations against the Nye County defendants; Count III alleging liability under the *Monell* doctrine against the Nye County defendants; and Count IX alleging defamation against Rhyal.

DATED this 17th day of November, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE