1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

KARL MITCHELL and KAYLA
MITCHELL,

4

            Plaintiffs

5

v.

6

NYE COUNTY, NEVADA, et al.,

7

            Defendants

8

9

Case No.: 2:20-cv-00086-APG-VCF

**Order (1) Granting in Part and Denying in
Part Defendants' Motion for Summary
Judgment; (2) Denying Plaintiffs' Motions
for Summary Judgment and to Extend
Time; (3) Denying Defendants' Motions to
Dismiss, to Strike, and for Leave to File
Supplemental Documents; and
(4) Dismissing Count IX without Prejudice**

[ECF Nos. 105, 112, 113, 119, 121, 122, 126]

10

11

12

13

        Karl and Kayla Mitchell sue Nye County and current or former county employees Susan
Ryhal, Sharon Wehrly, and Harry Williams.  The Mitchells allege the defendants violated state
and federal law when the Mitchells attempted to secure permits required to house tigers in Nye
County.

14

15

16

17

        The parties are familiar with the facts, so I repeat them only as necessary to resolve the
various pending motions.  I grant the defendants' motion for summary judgment except for the
defamation claim against Ryhal, which I dismiss without prejudice so the Mitchells can pursue
that claim in state court if they choose.  I deny all other pending motions.

18

**I.  MOTIONS TO DISMISS**

19

20

21

22

        The defendants request case-terminating sanctions because of the Mitchells' alleged
discovery misconduct.  They assert that the Mitchells lied at their depositions and that Karl
Mitchell used abusive language and abandoned his deposition.  The Mitchells deny that they lied
or that Karl acted in bad faith during discovery.

23

1        A district court may dismiss a case with prejudice under Federal Rule of Civil Procedure

2 37 or the court's inherent powers. *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337,

3 348 (9th Cir. 1995). A terminating sanction "is very severe." *Conn. Gen. Life Ins. Co. v. New*

4 *Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Only willfulness, bad faith, and

5 fault justify terminating sanctions." *Id.* (quotation omitted). I analyze five factors to decide

6 whether to order terminating sanctions: "(1) the public's interest in expeditious resolution of

7 litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

8 sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the

9 availability of less drastic sanctions." *Anheuser-Busch*, 69 F.3d at 348 (quotation omitted). The

10 fifth factor has three subparts: (1) whether the court considered lesser sanctions; (2) whether it

11 tried those sanctions; and (3) whether it warned the recalcitrant party about the possibility of

12 case-dispositive sanctions. *Id.* at 352. But these factors are not conditions precedent, and "[t]he

13 most critical factor to be considered . . . is whether a party's discovery violations make it

14 impossible for a court to be confident that the parties will ever have access to the true facts."

15 *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (quotation omitted).

16        Dismissal with prejudice is not appropriate here. Even if the Mitchells lied at their

17 depositions, that goes to their credibility and does not merit dismissal. Further, less severe

18 remedies (such as a narrow reopening of discovery) are available to rectify any prejudice to the

19 defendants caused by Karl's behavior. The Mitchells' conduct is not sufficiently severe to

20 terminate this case without a warning and an attempt at lesser sanctions. Thus, I deny the

21 defendants' motions to dismiss. ECF Nos. 105, 113. The additional evidence and briefing the

22 defendants seek to file would not impact my decision, so I deny their motion for leave to file

23 those documents. ECF No. 112.

## II. MOTION FOR EXTENSION OF TIME

The Mitchells move for an extension of the deadline to oppose the defendants' motion for summary judgment. They argue they need extra time because they have a pending public records request for defendant Williams' employment records and they did not have "adequate time to collect discovery." ECF No. 122 at 1-2. The defendants oppose because the Mitchells do not explain why the records are relevant and why they did not obtain them during discovery.

The Mitchells do not identify which Federal Rule of Civil Procedure they move under, but a party can secure a continuance of a motion for summary judgment if it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The party "must show that: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (simplified). "[T]he evidence sought must be more than the object of pure speculation," and the party seeking the continuance "must state what other specific evidence it hopes to discover and the relevance of that evidence to its claims." *Id.* (simplified). I also may extend a response deadline for "good cause" under Fed. R. Civ. P. 6(b)(1).

The Mitchells have not met Rule 56(d)'s requirements. They submitted a declaration from Karl, but he does not identify the specific facts sought nor explain why those facts are essential to oppose the summary judgment motion. Discovery was open for two and a half years and closed on August 29, 2022. ECF Nos. 37; 101 at 3. The Mitchells did not move to extend discovery before the deadline expired and they do not elaborate on their allegation that the length of discovery was inadequate. They do not clearly explain the purpose of obtaining Williams'

records, nor do they explain why they did not seek them until after discovery closed.[1]  I thus deny their motion under Rules 56(d) and 6(b)(1). ECF No. 122.

### III.  MOTIONS FOR SUMMARY JUDGMENT

I grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it may affect the case outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine when the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*  The moving party bears the initial burden of explaining the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If it meets its burden, the burden shifts to the nonmoving party to "produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick*, 850 F.3d at 440-41.

The defendants timely moved for summary judgment on all the Mitchells' claims. ECF No. 119.  The Mitchells moved for summary judgment after the deadline for dispositive motions, and the defendants moved to strike the Mitchells' motion as untimely. ECF Nos. 121, 126.

---

[1] The parties previously conferred about discovery of Williams' employment records, but they never resolved the issue.  The Mitchells apparently sought to show that Williams was terminated for lying. ECF No. 125 at 39-40.  In their response to the motion to strike, the Mitchells state the records are "to show Harry Williams is a Brady cop and that he has no immunity." ECF No. 129 at 3-4.  Insofar as the Mitchells seek impeachment material, they have not explained why that material is essential to their opposition to summary judgment, because credibility determinations are improper at the summary judgment stage. *See Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

I have discretion to consider an untimely motion for summary judgment. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 n.1 (9th Cir. 2007); *Dayton Valley Invs., LLC v. Union Pac. R.R. Co.*, 664 F. Supp. 2d 1174, 1178-79 (D. Nev. 2009). But even if I consider the Mitchells' motion on the merits, the motion, supporting materials, and record do not show that the Mitchells are entitled to summary judgment on their claims. The motion mostly repeats unsupported factual allegations and does not offer any evidence showing the absence of a genuine dispute of material fact entitling the Mitchells to judgment as a matter of law. Thus, I deny the Mitchells' motion for summary judgment and deny the defendants' motion to strike as moot. ECF Nos. 121, 126.

Because the Mitchells have not filed a response brief to the defendants' motion for summary judgment, I consider the motion unopposed.[2] But to the extent that the Mitchells' motion for summary judgment offers relevant arguments and evidence, I will consider that motion as an opposition to the defendants' motion. The defendants still bear the burden of showing there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See, e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (Rule 56 "prohibit[s] the grant of summary judgment by default even if there is a complete failure to respond to the motion" (quotation omitted)). But because the Mitchells did not "properly address [the defendants'] assertion of fact" by filing a response brief, I may consider asserted

---

[2] *See, e.g.*, *Grae-El v. City of Seattle*, Case No. C21-1678JLR, 2022 WL 3597408 at *5 (W.D. Wash. Aug. 23, 2022) (denying plaintiffs' motion for extension under either Rule 6(b) or Rule 56(d) and considering defendants' motion for summary judgment unopposed); *MacPherson-Pomeroy v. North Am. Co. for Life & Health Ins.*, No. 1:20-cv-00092-DAD-BAM, 2022 WL 1063039 at *4, *7 (E.D. Cal. Apr. 8, 2022) (failure of Rule 6 motion results in unopposed motion for summary judgment).

1  facts undisputed and grant summary judgment if the motion and supporting materials "show that

2  the movant is entitled to it." Fed. R. Civ. P. 56(e).

3  **A. § 1983 Claims**

4  The Mitchells bring several claims under 42 U.S.C. § 1983.  To succeed on a § 1983

5  claim, a plaintiff must show "two essential elements: (1) that a right secured by the Constitution

6  or laws of the United States was violated, and (2) that the alleged violation was committed by a

7  person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185

8  (9th Cir. 2006).  The defendants argue they are entitled to summary judgment on the § 1983

9  claims because the undisputed facts show that they did not violate any of the Mitchells' federal

10  rights.

11  Count I: Unconstitutional Conditions and Regulatory Taking

12  *i.  Unconstitutional Conditions on Permits*

13  The Mitchells assert that the defendants violated the unconstitutional conditions doctrine,

14  which holds that the government "may not deny a benefit to a person on a basis that infringes his

15  constitutionally protected interests." *Bingham v. Holder*, 637 F.3d 1040, 1045-46 (9th Cir. 2011)

16  (quotation omitted).  "The doctrine prevents the Government from using conditions to produce a

17  result which it could not command directly." *Oil States Energy Servs., LLC v. Greene's Energy*

18  *Grp., LLC*, 138 S. Ct. 1365, 1377 n.4 (2018) (quotation omitted).  The Mitchells claim that the

19  defendants impermissibly conditioned permits on the Mitchells relinquishing "their right to

20  transport their animals anywhere, for any purpose other than veterinarian care . . . as well as

21  prohibiting their animals to be out of their enclosures while filming or having family and friends

22  over." ECF No. 59 at 18.  The defendants argue the Mitchells do not have a right to own tigers

23  without regulation.

1    There is no constitutional right to the unregulated ownership of exotic animals.[3]  Thus,

2  the defendants did not violate a federal right when placing conditions on the Mitchells' permits.

3  The defendants did not violate the unconstitutional conditions doctrine and are thus entitled to

4  summary judgment on this claim.[4]

5    *ii. Regulatory Taking*

6    Count I also alleges an unconstitutional regulatory taking.  Under a "special application"

7  of the unconstitutional conditions doctrine, the government may not "condition the approval of a

8  land-use permit on the owner's relinquishment of a portion of his property unless there is a nexus

9  and rough proportionality between the government's demand and the effects of the proposed

10  land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599, 604 (2013)

11  (quotations omitted).  A regulatory taking occurs when a regulation "completely deprive[s] an

12  owner of all economically beneficial use of her property." *Bridge Aina Le'a, LLC v. Land Use

13  Comm'n*, 950 F.3d 610, 625-26 (9th Cir. 2020) (simplified).  If a property owner is not deprived

14  of all economic use of the land, there may still be a regulatory taking under the fact-specific

15  analysis prescribed in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104

16  (1978). *Id.* at 627.  Under *Penn Central*, I consider "the economic impact of the regulation on the

17

18  [3] *See, e.g.*, *Nicchia v. N.Y.*, 254 U.S. 228, 230 (1920) (dogs "may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right");
19  *Wilkins v. Daniels*, 913 F. Supp. 2d 517, 536 (S.D. Ohio 2012), *aff'd*, 744 F.3d 409 (6th Cir. 2014) ("Plaintiffs have a limited property interest in their exotic animals . . . such that a fundamental constitutional right is not implicated."); *Am. Canine Found. v. City of Aurora,*
20  *Colo.*, 618 F. Supp. 2d 1271, 1278 (D. Colo. 2009) ("Ownership of a dog does not implicate any fundamental constitutional right."); *Leo v. N.Y. State Dep't of Env't Conservation*, Case # 20-
21  CV-7039-FPG, 2022 WL 138538 at *5 (W.D.N.Y. Jan. 14, 2022) ("Plaintiff does not have a constitutionally-protected property interest in exotic animals.").

22  [4] The Mitchells refer to their tigers as emotional support animals.  It is unclear if any of their claims are based on this allegation.  Regardless, the Mitchells do not argue or point to any
23  authority that their federal rights are implicated by virtue of their exotic animals being for emotional support.

1  claimant and, particularly, the extent to which the regulation has interfered with distinct

2  investment-backed expectations," as well as "the character of the governmental action—for

3  instance whether it amounts to a physical invasion or instead merely affects property interests

4  through some public program adjusting the benefits and burdens of economic life to promote the

5  common good." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005) (simplified).  The

6  inquiry "turns in large part . . . upon the magnitude of a regulation's economic impact and the

7  degree to which it interferes with legitimate property interests." *Id.* at 540.  "[I]f a regulation

8  goes too far it will be recognized as a taking." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

9  *Plan. Agency*, 535 U.S. 302, 326 (2002) (quotation omitted).  The defendants argue they are

10  entitled to summary judgment because the Mitchells maintain viable economic use of their land.

11  They also argue that the challenged permit restrictions advance legitimate public interests.

12  The defendants are entitled to summary judgment on the regulatory taking portion of

13  Count I.  The defendants did not condition the approval of a land-use permit on the Mitchells

14  either relinquishing a portion of their property or losing all viable economic use of their land.[5]  I

15  therefore evaluate the claim and the undisputed facts under the *Penn Central* factors.  The

16  restrictions complained of are relatively minor intrusions on the Mitchells' use of their property.

17  The Mitchells may house up to 10 tigers, they must cage their tigers during filming or when

18  visitors are on the property, and they cannot travel with the animals unless to a veterinarian and

---

[5] The first amended complaint (FAC) is vague as to whether the Mitchells assert a regulatory taking of their real property, personal property, or both.  They challenge the restrictions on both their land-use permit and their Special Conditions Animal Permit (SCAP).  To the extent they allege a regulatory taking of their tigers, that theory fails because states have a "high degree of control over commercial dealings," such that owners of personal property "ought to be aware of the possibility that new regulation might even render [their personal] property economically worthless." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992); *see also Horne v. Dep't of Agric.*, 576 U.S. 350, 361 (2015) (discussing distinction between physical taking of personal property and regulatory taking of personal property).

1  after giving notice to the county. ECF No. 119-20 at 6.  Those regulations do not constitute a

2  taking under *Penn Central* because there is no evidence that the regulations are "functionally

3  equivalent to the classic taking in which government directly appropriates private property or

4  ousts the owners from his domain." *Bridge Aina Le'a*, 950 F.3d at 631 (quotation omitted).

5  There is no evidence that the restrictions placed on the Mitchells' permits have caused any

6  substantial diminution in the value of their property.  While there is evidence the Mitchells may

7  have lost paid contract opportunities because of the restrictions, "the mere loss of some income

8  because of regulation does not itself establish a taking." *Colony Cove Props., LLC v. City of*

9  *Carson*, 888 F.3d 445, 451 (9th Cir. 2018).  The challenged permit restrictions promote the

10  common good by regulating the ownership of exotic and potentially dangerous animals.  The

11  Mitchells present no evidence showing they could sustain their burden at trial of proving a

12  regulatory taking.  I therefore grant summary judgment to the defendants on Count I.

13  <u>Count II: Equal Protection Clause</u>[6]

14      In Count II, the Mitchells bring an Equal Protection Clause claim under two theories: that

15  the defendants discriminated against Karl Mitchell because of his race, and that the defendants

16  unconstitutionally treated the Mitchells as a class of one.  The defendants argue that there is no

17  evidence that they discriminated against Karl Mitchell because of his race or that they treat the

18  Mitchells as a class of one without a rational basis.

19  / / / /

20

21  [6] This count also alleges that the defendants violated the "Substantive Due Process Clause of the
22  Constitution." ECF No. 59 at 22.  However, the FAC makes no allegations regarding a
    deprivation of a fundamental right as required for a substantive due process claim, so I do not
23  address a substantive due process claim. *See C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154
    (9th Cir. 2016) (noting that substantive due process generally protects "fundamental rights to
    liberty and bodily autonomy").

1          *i. Racial Discrimination*

2          To succeed under the theory that the defendants discriminated against him because of his

3  race, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate

4  against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152

5  F.3d 1193, 1194 (9th Cir. 1998).  "To avoid summary judgment on a claim of racial

6  discrimination, the plaintiff must produce evidence sufficient to permit a reasonable trier of fact

7  to find by a preponderance of the evidence that the challenged action was racially motivated."

8  *Jones v. Williams*, 791 F.3d 1023, 1037 (9th Cir. 2015) (simplified).

9          The Mitchells allege the defendants placed restrictions on their permits because Karl

10 Mitchell is African American.  But there is no evidence in the record that the defendants were

11 motivated by Mitchell's race.  Absent any proof of that essential element, the defendants are

12 entitled to summary judgment. *See id.* (affirming summary judgment where plaintiff pointed to

13 no evidence of racial motivation).

14         *ii. Class of One*

15         To succeed under a class-of-one theory, a plaintiff must show that the defendants

16 intentionally treated him differently than others similarly situated without a rational basis.

17 *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  The Mitchells claim that

18 similarly situated exotic animal owners in Nye County are not required to obtain permits or are

19 not subjected to the same restrictions.  They also argue that Karl Mitchell was required to obtain

20 a land-use permit even though he is entitled to a grandfathered exemption.

21         There is no evidence to support the class-of-one claim.  The Mitchells offer no support

22 for their assertion that Karl Mitchell was unconstitutionally denied grandfathered status.  Indeed,

23 they admit that he moved in 2009 and again in 2010, presumably precluding a grandfathered

1 exemption. *See* Nye County Code § 17.04.905; ECF No. 121 at 2-3.  Beyond conclusory

2 allegations, the Mitchells offer no evidence identifying similarly situated exotic animal owners in

3 Nye County or showing that those owners are given preferential treatment.  There is evidence

4 that other exotic animal owners in the county are not similarly situated because they possess

5 USDA licenses or are exempt from permit requirements. ECF Nos. 119-3 at 4-5, 13-14; 119-5;

6 119-6.  The Mitchells do not possess a USDA license and there is evidence that Karl Mitchell

7 has a history of violating federal laws and regulations related to exotic animals. ECF No. 119-2

8 at 2-7.  These undisputed facts support a rational basis for imposing restrictions on the Mitchells'

9 ability to house tigers.

10    The defendants have met their burden by showing the absence of proof on an essential

11 element of the class-of-one claim because there is no evidence that the Mitchells are treated

12 differently than similarly situated exotic animal owners.  The Mitchells have not produced any

13 evidence raising a genuine issue of material fact that could satisfy their burden at trial.  I thus

14 grant summary judgment to the defendants on Count II.

15             Count III: *Monell* Liability

16    The Mitchells assert that Nye County is liable for the § 1983 violations by its employees

17 under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  The

18 liability of a municipality under § 1983 is "contingent on a violation of constitutional rights."

19 *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994); *see also Palmerin v. Riverside*, 794 F.2d

20 1409, 1414 (9th Cir. 1986) ("[A]bsent any constitutional violations by the individual defendants,

21 there can be no *Monell* liability.").  So insofar as the *Monell* claim is based on the conduct

22 alleged in Counts I and II, Nye County is entitled to summary judgment for the same reasons as

23 the individual defendants.

1        The Mitchells also allege that Nye County is liable under *Monell* because its policies

2   caused their land-use permit application to be denied in 2017.  But the permit denial alone does

3   not defeat summary judgment because there is no evidence that the denial implicates any

4   constitutional right.  I therefore grant summary judgment to Nye County on the *Monell* claim.

5        The defendants also argue the Mitchells' § 1983 claims are barred by qualified immunity

6   and the statute of limitations.  I need not thoroughly address these arguments because the

7   defendants have met their burden of showing the absence of material facts on other issues that

8   entitle them to summary judgment.  However, the Mitchells also allege they were harassed by

9   Ryhal and a Nye County SWAT team in July 2017, resulting in "severe distress, anxiety, and

10  nervousness," PTSD, and depression. ECF No. 59 at 10-11.  It is unclear whether this alleged

11  harassment is part of any claim, but the defendants argue that if it is, it is time-barred.

12       Federal courts apply the forum state's personal injury statute of limitations to § 1983

13  claims. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  In Nevada, the limitation period for

14  personal injury is two years. Nev. Rev. Stat. § 11.190(4)(e).  Federal law governs when a § 1983

15  claim accrues: "when the plaintiff knows, or should know, of the injury which is the basis of the

16  cause of action." *Fink*, 192 F.3d at 914 (quotation omitted).  Thus, to the extent that any claim is

17  based on Ryhal and other Nye County officials visiting the Mitchells' property in July 2017, it

18  accrued in 2017.  Because this suit was filed in 2020, any claim based on those visits is barred by

19  the two-year limitation period.

20       **B.  Count IX: Defamation**

21       In Count IX, the Mitchells claim that Ryhal, who is a Nye County animal control officer,

22  defamed them in a 2017 letter that she sent to Las Vegas Animal Control.  Ryhal asserts that she

23

1  is entitled to summary judgment because the claim is time-barred.  She also argues that any

2  statement was privileged.

3  <u>Statute of Limitations</u>

4       The defamation claim arises under Nevada law, so I apply Nevada law governing the

5  statute of limitations. *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (federal court exercising

6  supplemental jurisdiction over state law claims should apply substantive state law); *Guaranty*

7  *Trust Co. v. York*, 326 U.S. 99, 109-10 (1945) (statute of limitations is substantive).  In Nevada,

8  the limitation period begins when the relevant claim accrues, meaning "when a suit may be

9  maintained thereon." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997) (per curiam).  Generally,

10  a suit may be maintained once "the aggrieved party knew, or reasonably should have known, of

11  the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d

12  229, 233 (Nev. 1997) (per curiam).  Accrual is a question of fact unless the facts are

13  uncontroverted. *See Day v. Zubel*, 922 P.2d 536, 539 (Nev. 1996).  The limitation period for

14  defamation is two years. Nev. Rev. Stat. § 11.190(4)(c).

15       Ryhal asserts that the Mitchells became aware of the alleged defamatory statement,

16  which was made on November 21, 2017, almost immediately.  She points to a November 28,

17  2017 email from defendant Williams addressed to Kayla Mitchell, wherein Williams states "[t]he

18  [l]etter you requested in regards to Animal Control Officer Susan Ryhal will not be provided."

19  ECF No. 119-15 at 3.  Karl Mitchell responds, acknowledging receipt. *Id.*  Williams was

20  referring to the allegedly defamatory letter Ryhal sent to Las Vegas Animal Control. *Id.* at 2.

21  But this email exchange alone is insufficient to conclusively prove when the defamation claim

22  accrued.  While it may be evidence that the Mitchells knew Ryhal made a statement to Las

23  Vegas Animal Control, it does not show that they knew the statement was defamatory.  Ryhal

1  points to no other evidence of when the Mitchells knew or should have known of the defamatory

2  nature of the statement.  Thus, she has not met her burden of showing no genuine issue of when

3  the claim accrued.

4                                          Privilege

5          Ryhal also argues she is entitled to summary judgment because her statements as a public

6  official were absolutely privileged.  Whether a statement is privileged is a question of law.

7  *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983) (per curiam).  In

8  Nevada, "statements made in good faith furtherance of one's official duties are generally

9  privileged." *Jordan v. State ex rel. Dept. of Motor Vehicles & Public Safety*, 110 P.3d 30, 48

10  n.56 (Nev. 2005) (per curiam), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las

11  Vegas*, 181 P.3d 670 (Nev. 2008) (en banc).  Ryhal bears the burden of showing a privilege

12  applies. *See Lubin v. Kunin*, 17 P.3d 422, 427 (Nev. 2001) (per curiam) ("[P]rivileges are

13  defenses to a defamation claim and, therefore, the defendant has the initial burden of properly

14  alleging the privilege and then of proving the allegations at trial.").

15          Ryhal has not met her burden.  She devotes only a footnote to arguing that her statement

16  is privileged, and she does not cite to any Nevada law supporting her argument.  Nevada has

17  apparently rejected absolute privilege of an official's statement in favor of a conditional privilege

18  so long as the statement was "made in good faith." *Jordan*, 110 P.3d at 48 n.56; *see also*

19  Restatement (Second) of Torts §598A (conditional privilege applies to statements of inferior

20  state officers).  Ryhal's letter was sent pursuant to her official duties as an animal control officer

21  because it was on Nye County Sheriff's Office letterhead, addressed to a partner law

22  enforcement agency, and regarded her duties to enforce animal regulations in Nye County. ECF

23  No. 119-15 at 2.  But she has presented no evidence that her statement was made in good faith.

1 She points to no evidence in the record explaining why she made the statement or whether she

2 believed it to be true at the time.  I cannot assume good faith absent an affidavit or other

3 evidence in the record, and it is Ryhal's burden to produce that evidence as the party asserting

4 the privilege.  Thus, there is a genuine dispute of whether the statement was privileged.

5      Ryhal points only to the statute of limitations and privilege as reasons I should grant

6 summary judgment on the defamation claim.  Because she has not met her burden under either

7 theory, I deny her motion.

8 **C.  Supplemental Jurisdiction**

9      Because I am granting summary judgment on all federal claims and only the state law

10 defamation claim remains, I may decline to exercise supplemental jurisdiction over that

11 remaining claim. 28 U.S.C. § 1367(c)(3).  When all federal claims are dismissed before trial, the

12 remaining state law claims should typically also be dismissed. *Acri v. Varian Assocs., Inc.*, 114

13 F.3d 999, 1000 (9th Cir. 1997) (en banc).  "In the usual case in which all federal-law claims are

14 eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

15 doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

16 exercise jurisdiction over the remaining state-law claims." *Satey v. JPMorgan Chase & Co.*, 521

17 F.3d 1087, 1091 (9th Cir. 2008) (quotation omitted).  Comity strongly favors a state court

18 hearing this defamation claim, which raises a question under Nevada law of when a public

19 official's statement is privileged.  Further, it is not unfair, prejudicial, or inconvenient to either

20 party if they litigate a state law claim in state court.  Thus, I dismiss the defamation claim

21 without prejudice so that the Mitchells can pursue it in state court if they wish.

22 / / / /

23 / / / /

15

## IV. CONCLUSION

I THEREFORE ORDER that the plaintiffs' motions for summary judgment and to extend time **(ECF Nos. 121, 122) are DENIED**.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 119) is GRANTED in part and DENIED in part**. I grant summary judgment to the defendants on all claims except the defamation claim against defendant Susan Ryhal in Count IX.

I FURTHER ORDER that the defendants' motions to dismiss, motion to strike, and motion for leave to file supplemental documents **(ECF Nos. 105, 112, 113, 126) are DENIED**.

I FURTHER ORDER that the remaining state law claim for defamation against defendant Susan Ryhal is **DISMISSED without prejudice** to the plaintiffs pursuing that claim in state court.

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants on Counts I through VIII and X, and to close this case.[7]

DATED this 27th day of February, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[7] I previously dismissed with prejudice counts IV through VIII and X. ECF Nos. 96, 103.